Caldwell, J.
The original proceeding in this case was an ac.tion of ejectment, brought by the plaintiffs in error, who claim as the children and heirs of James Parker, deceased. *James Parker died intestate in 1827, the owner of the tract of land in ■-controversy. He left a widow, Mary Parker, who has since mar *319 ried Thomas Thornburgh, and three small children, viz., Caroline, now the wife of Charles A. Moore; Delilah, now married to John Fenton ; and Leah Ann, married to Charles Harrison.
The plaintiffs having proved heirship and title in their ancestor, rested. The defendant then offered in evidence a record of certain ■chancery proceedings, commenced in 1831, by William L. Patter - •son, on a mortgage given by James Parker, in his lifetime, to William L. Patterson and John Chambers, on the property in controversy, which proceedings resulted in a sale of the property and •conveyance to William L. Patterson, under whom the defendant claims title. The plaintiffs objected to the introduction of thisrecord, claiming that they had not been made parties to the proceeding, the court overruled the objection, admitted the record, and a verdict •and judgment was given for defendants. The bill in the chancery ■case sets forth the property as belonging to James Parker, deceased, and correctly stated who were his widow and children, and prayed process against them; a siibpena issued for all of them, and was returned indorsed on the back of the writ as follows: “ October 18, 1831. This subpena, Nathaniel Sweet, Thomas Thornburgh, and Mary, his wife, by reading, the others named in the within writ not subpenaed. Wm. Curry,

Sheriff.”

The court appointed John Winner, a distant relative of theirs, .guardian ad litem for the infant children. The guardian ad litem filed his answer under oath, and the court proceeded to hear and ■dispose of the case.
From the date which the papers afford, we infer that the youngest child at this time was about five or six, and the oldest nine or ten years of age. They were living with their mother and her husband, Thomas Thornburgh.
The great question presented in the case is whether the court iu “this chancery proceeding obtained jurisdiction over *the ■children, so as to dispose of their rights. If the court obtained jurisdiction over their persons, it matters not what errors may have intervened, the proceedings can not be collaterally impeached, but must be held valid until reversed. If, however, that jurisdiction was not obtained, the record was a nullity, and the court erred in permitting it to be given in evidence.
The defendants in that case resided within the county in which the land lies; the statute in such case requires that the process shall *320 be subpena, and that it shall be served on the defendant personally, or left at his usual place of abode.
None of these requisites were performed here, or attempted; the-return directly negatives personal service, and precludes the supposition that a copy was left at their plape of abode, as it states that the subpena was served on Thornburgh and wife by reading. The statute requires service to be made, and we can not dispense with its requisitions. Nothing discretionary is left with the court. The legislature have prescribed the means by which the courts shall obtain jurisdiction, and the courts can not determine that anything short of such means shall give them jurisdiction. It is sometimes said that it can be a matter of no importance whether children, such as these were, are served with process or not; to this we can not give our assent, but, even if it were so, it is a suggestion proper for the legislature—not fora court; the legislature makes the rules, and the courts have to be bound by them. The return of the officer is the evidence to the court and to the world of the fact that the party has been subjected to its process or not; whether he has been brought into court; whether jurisdiction is claimed to-have been obtained over his person. If the process is returned served, it is proof of. that fact. If the return is no service, it is proof equally explicit that no service has been made, and is notice to the world, as well as the court, to parties and their friends, that no service is claimed to have been made. And here we will remark, that this case differs from cases in which the record is silent on the subject of process or service. In *such cases it has been held that, although the decree of the court is reversible for error, not showing affirmatively a necessary fact, yet, because a court of general jurisdiction has assumed to exercise jurisdiction of the case, it will be presumed that, notwithstanding the silence of the record, the court had obtained jurisdiction over the person of the defendant. That presumption is rebutted and precluded in this case by the positive statement of the record that no service was made. For it is to be remarked, that in those cases where the record being silent on the subject of service, jurisdiction has been presumed, it has always been held that it was competent for the-defendant to rebut the presumption of service, by affirmative proof that he had not been served, and then the record becomes a nullity,, ¿xnd can be collaterally impeached.
The record in this ease furnishes the proof that no sérviee was in- *321 fact made. This case too is distinguishable from a class of cases, which have been the subject of frequent controversy in our courts, where lands have been sold by an administrator for the payment, of debts. In these eases it has been held that service on the infant heirs was not necessary to give the court jurisdiction. But in these cases it will be found that the courts rest their decisions on the peculiarity of the proceeding and the statute, and on the ground that the administrator is the representative of the estate of the creditors, and indirectly of the interests of the heirs; and in all of these cases the courts have been careful to draw a distinction between that class of cases and a chancery case like the present.
It has been suggested that a bill filed to foreclose mortgaged premises is a proceeding in rem, and that therefore the court obtained jurisdiction without bringing the defendants into court. A proceeding to foreclose mortgage premises is a proceeding, in. one sense, both in personam and in rem. It is a proceeding in personam, because it seeks to charge a defendant with a debt. An account has to be taken against the defendant before the property can be ^subjected, and the account thus found becomes a debt of record against the defendant, after the mortgaged property is exhausted, and now the decree may be so framed that after the mortgaged property is exhausted, execution can be had on the decree for the residue found due, as on judgments at law. Hamilton v. Jefferson, 13 Ohio, 427. Myers et al. v. Hewett, 16 Ohio, 456. But even if it was not a debt of record, or if no execution could issue after the mortgaged property was exhausted, it would be necessary that the defendant should be in court to contest the claim, or ascertain the amount, as much where the claim is to be enforced against a particular piece of his property as where it is to cover his property generally. It is a proceeding in rem, so far that it is necessary that the property sought to be especially appropriated should be within the jurisdiction of the court. In this sense it is a proceeding both in personam, and in rem, and requires that the court should have jurisdiction both of the person and of the thing. It is a proceeding in chancery, and comes within the letter of the law requiring the defendants to be served with subpoena, and there is nothing in the reason of the thing to take it out of the general rule.
A majority of the court are of opinion that as the children of James Parker have not been served with process, the decree so far *322 as it attempts to divest their title is void, and that the court of common pleas erred in permitting the record to be given in evidence. The judgment will therefore be reversed and the cause remanded to the common pleas for further proceedings.